**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KRISTIN NICHOLS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 26-3** |
| **JRON SERVICES, LLC, ET AL.** | **SECTION: "G" (1)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Kristin Nichols, on behalf of B.N. and G.N., and Lauren O'Neill, on behalf of N.N.'s (collectively, "Plaintiffs") Motion to Remand.[1] This civil action was originally filed on November 10, 2025, in the 25th Judicial District Court for the Parish of Plaquemines by the surviving family members of Joshua Nichols, who died in an explosion involving a gas lift line.[2] In the Motion to Remand, Plaintiffs move the Court to remand this case to the 25th Judicial District Court for the Parish of Plaquemines.[3] Defendant The Production Group, LLC ("TPG") opposes the Motion to Remand.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the Motion to Remand.[5]

## I. Background

On October 25 and 26, 2023, certain parties including, Whitney Oil & Gas, LLC

---

[1] Rec. Doc. 11.

[2] Rec. Doc. 1-2.

[3] Rec. Doc. 11.

[4] Rec. Doc. 14.

[5] Rec. Doc. 11.

("Whitney") and Trimont Energy (GIB), LLC ("Trimont") filed petitions for relief in the Bankruptcy Court for the Eastern District of Louisiana under Chapter 11 of Title 11 of the United States Code.[6] In the Chapter 11 bankruptcy cases, the debtors received approval to sell certain property of the debtors' estates to interested purchasers pursuant to Sections 363 and 365 of the Bankruptcy Code.[7] On May 29, 2024, the Bankruptcy Court approved the sale of certain property from Trimont to a Spectrum AR, LLC.[8] The sale included mineral leases, wells, facilities, and equipment related to the production and transportation of hydrocarbons located in the Garden Island Bay area ("GIB Assets"), as well as the assignment of related executory contracts to Spectrum AR, LLC.[9] The Purchase and Sale Agreement ("PSA") for the GIB Assets maintained and created mutual obligations.[10] Under the PSA, Trimont and Spectrum AR, LLC became obliged to indemnify each other if certain conditions were met.[11]

Following the sale of the GIB Assets, on August 17, 2024, Joshua Nichols died in a pipeline explosion that occurred while he was investigating a gas lift line leak.[12] On November 10, 2025, Plaintiffs filed this action in the 25th Judicial District Court for the Parish of Plaquemines, asserting negligence claims against Defendants JRON Services, LLC, TPG, and Piranha Rentals,

---

[6] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. Oct. 26, 2023) (Rec. Doc. 1); *In re Trimont Energy (GIB) LLC*, No. 23-11869 (Bankr. E.D. La. Oct. 25, 2023) (Rec. Doc. 1); *In re Trimont Energy (NOW) LLC*, No. 23-11868 (Bankr. E.D. La. Oct. 25, 2023) (Rec. Doc. 1); *In re Trimont Energy Limited Inc.*, No. 23-11872 (Bankr. E.D. La. Oct. 26, 2023) (Rec. Doc. 1).

[7] *Id.*

[8] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281).

[9] *Id.*

[10] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281 at 26–99); *Kristin Nichols, et al. v. Whitney Oil & Gas, LLC, et al.*, No. 23-533 (Rec. Doc. 11-1).

[11] *Kristin Nichols, et al. v. Whitney Oil & Gas, LLC, et al.*, No. 23-533 (Rec. Doc. 11-1).

[12] Rec. Doc. 1-2.

LLC.[13] On January 2, 2026, TPG removed the case to this Court pursuant to 28 U.S.C. § 1334, alleging that the instant action "concerns and relates to a Chapter 11 case that was administered before Judge Meredith Grabill of the United States Bankruptcy Court for the Eastern District of Louisiana entitled *In re Whitney Oil & Gas*, LLC, Case No. 23-11873."[14] On February 9, 2026, Plaintiffs filed the Motion to Remand.[15] On February 23, 2026, TPG filed an opposition to the Motion to Remand.[16]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion to Remand*

Plaintiffs move the Court to remand this case to the 25th Judicial District Court for the Parish of Plaquemines.[17] Plaintiffs assert that the Court should remand this case because their claims do not "relate to" the bankruptcy case entitled, *In re Whitney Oil & Gas, LLC*, Case No. 23-11873 (the "Bankruptcy Case"), because the removing defendants were not in privity with the bankruptcy debtor.[18]

Plaintiffs submit that TPG erroneously contends that the "related to" standard is satisfied, because there are "mutual indemnity obligations" between TPG and Spectrum OpCo, LLC[19] Plaintiffs aver that TPG's rationale is that the indemnity obligations between them could impact

---

[13] *Id.*

[14] Rec. Doc. 1 at 1–2.

[15] Rec. Doc. 11.

[16] Rec. Doc. 14.

[17] Rec. Doc. 11.

[18] Rec. Doc. 11-1 at 1.

[19] *Id.* at 2.

the Whitney estate if TPG makes an indemnity claim against Spectrum OpCo, LLC, who in turn passes that indemnity claim onto Whitney through "the supposed asset purchase agreement that exists between them."[20] However, Plaintiffs contend that Spectrum OpCo, LLC is a not a party to the Bankruptcy Case that this action is supposedly related to.[21] Further, Plaintiffs assert that they believe the asset purchase agreement that TPG relies on is actually between Spectrum AR, LLC, which is a different entity than Spectrum OpCo, LLC, and Trimont.[22] Accordingly, Plaintiffs contend that the asset purchase agreement between Trimont and Spectrum AR, LLC has no relation to the indemnity agreement between TPG and Spectrum OpCo, LLC.[23] Therefore, Plaintiffs argue that the indemnity agreement cannot affect the bankruptcy estate, which should result in this Court remanding the case to state court.[24]

**B.      *TPG's Arguments in Opposition to the Motion to Remand***

TPG asserts that this Court should deny the Motion to Remand, because Plaintiffs' claims are "related to" the Bankruptcy Case.[25] TPG clarifies that the indemnity agreement it relies on is within a Master Services Agreement (the "MSA"), executed by TPG and Spectrum OpCo, LLC.[26] TPG contends that the indemnity obligations within the MSA are between TPG and "Spectrum

---

[20] *Id.*

[21] *Id.*

[22] *Id.* Plaintiffs submit that no asset purchase agreement is attached to the Notice of Removal and contend the asset purchase agreement referenced in the Notice of Removal is the one between Trimont Energy (GIB), LLC and Spectrum AR, LLC. *Id.* at 4.

[23] *Id.* at 3–4.

[24] *Id.* at 4.

[25] Rec. Doc. 14.

[26] *Id.* at 2.

Group."[27] Further, TPG avers that the MSA defines "Spectrum Group" to include "any other company, corporation or other business entity . . . under common, control with" Spectrum OpCo., LLC.[28] Thus, TPG asserts that its mutual indemnification obligations also extend to Spectrum AR, LLC as a business entity under common control with Spectrum OpCo, LLC.[29]

Moreover, TPG avers that the asset purchase agreement between Spectrum AR, LLC and Trimont also includes a mutual indemnity clause which covers each party's "affiliates."[30] Thus, TPG contends that "if it is determined that Mr. Nichols's death was caused by the negligence of any of the defendants, the bankruptcy estate of Whitney will inevitably be impacted[,]" because "[t]he entities are affiliated and mutually obligated to fulfill their respective indemnity obligations."[31] Hence, TPG argues that the Court should deny the Motion to Remand because, Spectrum AR, LLC and Spectrum OpCo, LLC are affiliated and bound by the aforementioned indemnity provisions, and the facts alleged in the Petition are sufficient to raise the prospect of a post-petition indemnity obligation, flowing either from the Debtor's bankruptcy estate or from Spectrum affiliates to the Debtor.[32]

## IV. Analysis

Plaintiffs move the Court to remand this case to state court, because they argue that their claims do not "relate to" the Bankruptcy Case. TPG asserts that Plaintiffs' claims do "relate to"

---

[27] *Id.*

[28] *Id.* at 3 (quoting Rec. Doc. 14-1 at 3).

[29] *Id.* TPG notes that Joseph Winkler is the Chief Financial Officer of both Spectrum OpCo, LLC and Spectrum AR, LLC. *Id.* (citing Rec. Docs. 14-1 at 32, 14-3 at 1).

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.* at 5.

the Bankruptcy Case, because of indemnity agreements between the parties of the Bankruptcy Case and the instant case, which could cause the outcome of this litigation to affect the administration of the bankruptcy estates.

Under 28 U.S.C. § 1334, the district courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11."[33] "Related to" is a term of art.[34] An action is "related to" a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the debtor's estate."[35] "For jurisdiction to exist, the anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate."[36] "The law is well established that when testing "related to" jurisdiction, an effect is not required to be certain."[37] "Certainty, or even likelihood, of such an effect is not a requirement. Rather, jurisdiction will exist based on a finding of any conceivable effect."[38]

Here, TPG offers two agreements which when considered together, allegedly affect the administration of the bankruptcy estates. First, TPG points to the MSA which identifies TPG as

---

[33] *Firefighters Ret. Sys. v. Consulting Grp. Servs. LLC*, 541 B.R. 337, 350-51 (M.D. La. Sept. 14, 2015)

[34] *Id.* (citing *In re Canion*, 196 F.3d 579, 585 (5th Cir.1999)).

[35] *Id.* (quoting *In re Bass*, 171 F.3d 1016, 1022–23 (5th Cir.1999)).

[36] *Id.*

[37] *Id.*

[38] *Id.* (citing *In re Canion*, 196 F.3d at 585).

"Contractor" and Spectrum OpCo, LLC as "Company."[39] Further, the MSA provides the following

term definitions:

> **"Contractor Group"** means and includes (both individually and collectively) Contractor, Contractor's Personnel, its Affiliates, Subcontractors, and its and their co-participants, co-lessees, co-owners, joint venturers, and its and their respective directors, o icers, employees (including agency personnel), servants, agents, and invitees, but does not include any member of Spectrum Group. . . .
>
> **"Spectrum"** means Company or any of its Affiliates and, in respect of a particular Work Order, "Spectrum" shall mean Company or the Affiliate, that executes such Work Order with Contractor. . . .
>
> **"Spectrum Group"** Company, its Affiliates, its and their co-participants, partners, co-lessees, co-owners, joint venturers, and contractors and subcontractors, and its and their respective directors, officers, employees (including agency personnel), servants, agents and invitees, but does not include any member of Contractor Group.[40]

The MSA also contains indemnity clauses with the following language: "*CONTRACTOR HEREBY RELEASES AND SHALL PROTECT, DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS SPECTRUM GROUP, UPON DEMAND, FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, AND EXPENSES SUFFERED . . .*" and "*SPECTRUM HEREBY RELEASES AND SHALL PROTECT, DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR GROUP, UPON DEMAND, FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, AND EXPENSES SUFFERED . . .*"[41]

The MSA designates the "General Maritime Law of the United States" as the governing

law of the agreement, or alternatively the law of the State of Louisiana, if maritime law is not

---

[39] Rec. Doc. 14-1 at 3.

[40] *Id.* at 6.

[41] *Id.* at 19–20 (emphasis added).

applicable.[42] The Fifth Circuit has recognized that "the interpretation of an indemnity provision in a maritime contract is ordinarily governed by federal maritime law."[43] Further, "federal law recognizes the validity of the third party beneficiary theory of contracts."[44] "Under this theory, contracting parties may create rights in favor of a non-contracting third party by manifesting an intention to do so."[45]

Here, the indemnity provisions in the MSA clearly create indemnity rights in favor the parties to that contract (TPG and Spectrum OpCo, LLC). Moreover, the MSA defines the terms "Spectrum Group", "Spectrum", and "Contractor Group" to broadly include the affiliates of TPG and Spectrum OpCo, LLC. Accordingly, the MSA creates indemnity rights in favor of non-contracting third-parties such as Spectrum AR, LLC, which is affiliated with Spectrum OpCo, LLC.[46] Therefore, Spectrum AR, LLC may be obligated to indemnify TPG if Mr. Nichol's death is determined to be caused by TPG's negligence in this case.

The second agreement TPG points to is the PSA, which among other things, transferred interests in mineral leases, wells, facilities, and equipment related to the production and transportation of hydrocarbons from Trimont to Spectrum AR, LLC.[47] The PSA was executed

---

[42] *Id.* at 30.

[43] *Greenslate v. Tenneco Oil Co.*, 623 F. Supp. 573, 575 (E.D. La. 1985) (citing *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329 (5th Cir.1981).

[44] *Greenslate*, 623 F. Supp. at 576.

[45] *Id.*

[46] The MSA designates notices for Spectrum to be sent to Joe Winkler. Rec. Doc. 14-1 at 32. The asset purchase agreement between Trimont Energy (GIB), LLC and Spectrum AR, LLC designates notices for Spectrum AR, LLC to also be sent to Joe Winkler. Rec. Doc. 12-2 at 37. Thus, these two Spectrum entities are clearly affiliated.

[47] Rec. Doc. 14-2.

during the Bankruptcy Case proceedings, and approved by the Bankruptcy Court.[48] Under the PSA, Trimont is obligated to indemnify Spectrum AR, LLC's "agents, partners, … affiliates, subsidiaries, successors, and assigns" for liabilities "to third parties for personal injury or wrongful death to the extent attributable to [Trimont's] ownership and operation of the Assets prior to the Effective Time"[49] Further, the PSA obligates Spectrum AR, LLC to indemnify Trimont and its "agents, partners, … affiliates, subsidiaries, successors, and assigns" for losses relating to the GIB Assets, to the extent a claim arose after effective date of the sale.[50]

Thus, if Spectrum AR, LLC (a Spectrum OpCo affiliate) becomes obligated under the MSA to indemnify TPG for Mr. Nichol's death, this obligation could then trigger the indemnification provisions under the PSA which could oblige Trimont (a Whitney affiliate) to indemnify Spectrum AR, LLC.[51] Alternatively, under the PSA Spectrum AR, LLC could become obligated to indemnify Whitney for Mr. Nichols death, which could then trigger the obligation under the MSA for TPG to indemnify Spectrum AR, LLC. Due to these indemnity agreements, the outcome of this litigation could conceivably affect the administration of the bankruptcy estates. The facts alleged in the Petition are sufficient to raise the prospect of a post-petition indemnity obligation, flowing from the debtor's bankruptcy estate, which would diminish the estate to the detriment of creditors, or from TPG to the debtor, which would increase the estate to the benefit of creditors. Because the facts alleged in the Petition give rise to an inference that Plaintiffs' claims will have

---

[48] *In re Whitney Oil & Gas LLC*, No. 23-11873 (Bankr. E.D. La. May 29, 2024) (Rec. Doc. 281 at 26–99); Rec. Doc. 11-1.

[49] Rec. Doc. 14-2 at 30–31.

[50] *Id.* a 31.

[51] Whitney presents itself as an affiliate of Trimont. *Kristin Nichols, et al. v. Whitney Oil & Gas, LLC, et al.*, No. 23-533 (Rec. Doc. 10). Further, multiple Trimont entities and Whitney are represented by the same attorneys in that matter.

a "conceivabl[e] affect" on the debtors' bankruptcy cases, this Court has "related to" jurisdiction over Plaintiffs' claims.[52]

### V. Conclusion

For the reasons discussed above, the Court finds that it has jurisdiction over this matter under 28 § U.S.C. 1334(b).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand[53] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this <u>29th</u> day of May, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[52] *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

[53] Rec. Doc. 11.